BARRY, Judge.
The trial judge’s reasons for judgment present the factual background of this litigation and the basis for judgment which provides in pertinent part:
“This litigation began on August 22, 1974, when A. J. Graffagnino and Donald G. Perez, owners of the property at the corner of 8th Street and Causeway Boulevard in Metairie, filed a petition to enjoin the defendants, Lifestyles, Inc. and Murray P. Holmes, an officer of Lifestyles, from removing or disassembling a structure on the land. The defendants then answered, alleging that the structure is an “O’Dome”, a dome-like building on a wooden platform supported by pilings and hooked up to electrical and water connections. The defendant, Murray, later testified at trial that the former owner of the property, Leeand, Inc., had allowed Lifestyles to place this demonstration model of the type of building it sells in return for keeping the grass cut. The defendants further alleged that the building is designed to be portable and therefore movable and its ownership did not pass when ownership of the land passed to the plaintiffs on December 20, 1973. Defendants also alleged that Leeand had' agreed in its arrangement with Lifestyles that it would retain ownership of the O’Dome and the right to remove it at the end of the lease and had informed the plaintiffs of this agreement before plaintiffs had bought the property.
“The defendant also reconvened against the plaintiffs for damages to the structure, which is now destroyed, in the amount of $15,000.00. The defendants also third-partied the former owner, Le-eand and its president, Folse Roy, alleging that if the third party defendants had failed to notify the original plaintiffs, specifically the ownership of the structure separate from the land, then the third party defendants are liable to defendants for the amount of their recon-ventional demand.
“The original plaintiffs’ petition for an injunction has become moot since the building has subsequently been destroyed. The only issues now before this court concern the defendants’ demands.
“The written act of sale by which Le-eand conveyed the land to the plaintiffs on December 20,1973, describes the property conveyed as ‘Six certain lots of ground, together with all the buildings and improvements thereon ... ’. The property is described in the same manner in the mortgage and conveyance certificates.
“Art. 2276 of the La.Civil Code provides that ‘neither shall parol evidence be admitted against what is beyond what is contained in the acts nor on what may have been said before, or at the time of making them, or since.’ Other than in an action for reformation for mutual mistake, the sole exception to this general rule excluding parol evidence is that uncertain ties or ambiguities in the language may be clarified by parol evidence. Liberty Mutual Ins. Co. v. Ads, Inc., 357 So.2d 1360 (4th Cir. 1978). In this case the wording of the contract of sale between Leeand and the plaintiffs is clear and unambiguous. Ownership of all buildings and improvements transferred with the land. The terms of the verbal agreement between Leeand and Lifestyles cannot be introduced to vary the terms of the contract of sale.
“It is agreed by all parties that Lifestyles did own the O’Dome and did lease the land from Leeand in July of 1973. Nevertheless, this lease was not recorded and the plaintiffs were not parties to it, so the plaintiffs acquired the property and buildings and improvements thereon free of obligations of the unrecorded lease regardless of the plaintiffs’ actual knowledge of the situation. Art. 2276; McDuffie v. Walker, 125 La. 152, 51 So.2d 100 (La., P. 100); Benoit v. Acadia Fuel & *744 Oil Distributors, Inc., 315 So.2d 842 (3rd Cir. 1975), writ refused, 320 So.2d 550 (La.1975); American Creosote Co., Inc. v. Springer, 257 La. 116, 241 So.2d 510 (La. 1970).”
* * * * * *
“Therefore, ownership of the O’Dome passed to the plaintiffs in the act of sale if it was a ‘building or improvement’, i. e., an immovable. The Court believes that it is an immovable, a ‘building or other construction’ according to La.C.C. Art. 464 (now C.C. Art. 463, as revised by acts of 1978, No. 728), and the jurisprudence of this state.
“In Ellis v. Dillon, 345 So.2d 1241 (1st Cir. 1977), the court held that a mobile home, sitting on its axle, hooked up to electrical wires and water pipes, was an immovable by nature. See the court’s reasoning, at P. 1243.
“In Bailey v. Kruithoff, 280 So.2d 262 (2nd Cir. 1975), the court held that a fence was immovable by nature because it was embedded in the ground and because, unlike a movable, it had no identity as a fence when moved; it had identity only when constructed. See the court’s reasoning, P. 264.
“While the O’Dome is designed to be portable, it is also designed to withstand storms and high winds. Therefore, when it is in use, it is designed to have a degree of permanency.
“The structure involved in this case was situated on a platform integrated into the ground with pilings. The structure remained so situated on the property for over a year in all kinds of weather, as the defendant, Holmes, testified that it was designed to do. It could be and was designed to be disassembled and transported easily, but it would lose its identity as a result. Furthermore, as the court held in Ellis v. Dillon, supra, the courts must determine what is a building or other construction qualifying as an immovable under Art. 464 (now Art. 463, revised by Acts 1978, No. 728) in light of the social needs of the time. The O’Dome is designed to be easily portable, yet it is intended to be used as a dwelling. When used as a dwelling it is integrated with the soil and stationary. It is a movable only when disassembled, i. e., not in use. The O’Dome on the plaintiff’s property was therefore an immovable and therefore ownership of it passed to the plaintiffs along with the land it occupied in the act of sale of December 20, 1973.
“Therefore, the court will dismiss Lifestyles’ demands against A. J. Graffag-nino and Donald G. Perez.
“The court is of the opinion that Le-eand, Inc. was well aware of the fact that it did not own the building when it sold the land. Therefore, the court will order Leeand, Inc. to pay to Lifestyles, Inc., $8,000.00 representing the value of the building. The court bases this recovery on the fact that Leeand, Inc. would be unjustly enriched if it was allowed to sell a building that was not their own and keep all the proceeds.”
We agree that plaintiffs’ petition for injunctive relief is moot and we fail to find abuse of discretion in the trial judge’s determination that the O’Dome structure was immovable. Further, Leeand’s lease with Lifestyles was not recorded and plaintiffs were not privy to the lease, therefore, title to the immovable structure was legally transferred to plaintiffs at the time of the sale with Leeand.
We have difficulty with the lower court’s holding that Leeand owes damages to Lifestyles because the O’Dome structure was transferred to plaintiffs when the sale was passed. The record shows that Leeand notified one of the plaintiffs in writing prior to the sale that Lifestyles owned the O’Dome structure, and it is abundantly clear that all parties to this litigation were aware that the O’Dome structure was owned by Lifestyles. Most importantly, Lifestyles was put on notice that Leeand was selling its property to the plaintiffs.
The act of sale included the standard verbage “..., together with all the buildings and improvements thereon, ...” and Leeand’s only fault, if it be considered a *745 fault, was in not noticing this language in the sale nor noting or requesting that the O’Dome structure be specifically excluded in the sale. However, Lifestyles had knowledge that the sale was pending, certainly was aware that its lease with Leeand was not recorded, yet did nothing to protect its acknowledged ownership of the structure. Lifestyles’ apparent options included recordation of its written lease, or removal of the structure prior to the sale, or working out an agreement with the plaintiffs. We feel that Lifestyles’ failure to protect itself constituted negligence and was the proximate cause for its subsequent loss and conclude that the district court judgment to the contrary was manifest error.
Accordingly, the judgment of the district court awarding damages in favor of Lifestyles, Inc. is reversed and set aside and in all other respects the judgment is affirmed. Costs of this appeal are to be paid by Lifestyles, Inc.

REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.