1996 SD 66

Jeffrey G. OLSON and Donald
W. Sanderson, Plaintiffs
and Appellants,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY, and United
Fire and Casualty Company, Defendants
and Appellees,

and

Ted Pfisterer, Ellen Pfisterer, Timothy J.
Pfisterer and Dean Kurtz Construction
Company, a South Dakota Corporation,
Defendants.

Nos. 19362, 19363 and 19364.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1996.

Decided June 5, 1996.

Jeffrey L. Viken and Scott D. McGregor of Viken, Viken, Pechotz, Leach & Dewell, Rapid City, for appellant Olson.

Timothy L. Thomas of Morrill, Brown, Thomas & Nooney, Rapid City, for appellant Sanderson.

G. Verne Goodsell and Mark J. Connot of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for appellee U.S. Fidelity and Guaranty Company.

David J. Vickers, Roger A. Sudbeck and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for appellee United Fire and Casualty Company.

MILLER, Chief Justice.

[¶ 1] Jeffrey G. Olson and Donald W. Sanderson appeal the trial court's order granting summary judgment to United States Fidelity and Guaranty Company (USF & G) and United Fire and Casualty Company (United Fire). We affirm.

## FACTS

[¶ 2] Olson and Sanderson (collectively referred to as Plaintiffs) attended a party hosted by Tim Pfisterer. During the party, Pfisterer offered to give Plaintiffs a ride in a cage attached to a forklift. Pfisterer had allegedly borrowed the forklift from his employer to perform some work on a personal construction project.

[¶ 3] The forklift tipped while Pfisterer was seated at the steering wheel operating the controls and Plaintiffs were in the cage at a height of approximately thirty-five feet. Pfisterer escaped relatively uninjured, but Plaintiffs sustained serious injuries. They filed negligence actions against Pfisterer and his employer.

[¶ 4] Plaintiffs subsequently brought a declaratory judgment action, alleging Pfisterer was an insured under insurance policies issued to one or both of his parents by USF & G and United Fire (collectively referred to as Insurers). Plaintiffs argued that Pfisterer's actions fell within the coverage extended by these policies.

[¶ 5] Insurers moved for summary judgment on several grounds. They argued: (1)

the forklift was a motor vehicle or motorized land conveyance which was excluded from coverage under the policies; (2) Pfisterer was not a resident of his parents' household at the time of the accident and therefore was not an insured under the policies; (3) insufficient notice of the accident and injuries was given to Insurers; and (4) a coverage exclusion applied because the forklift was being used for business purposes. The trial court granted their motion, concluding that the forklift involved in the accident was a "motor vehicle or motorized land conveyance" which was excluded from coverage under the policies. Plaintiffs appeal.

## STANDARD OF REVIEW

[¶ 6] This case rests on the interpretation of an insurance contract. "Construction of a written contract is a question of law." *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275 (S.D.1994) (citing *Dirks v. Sioux Valley Empire Elec. Ass'n*, 450 N.W.2d 426, 427–28 (S.D.1990)). When interpreting an insurance policy, specific rules of construction apply.

> Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation. . . . This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

*Rogers v. Allied Mutual Ins. Co.*, 520 N.W.2d 614, 616 (S.D.1994) (citations and quotations omitted). "[I]nsurance policies must be subject to a reasonable interpretation and not one that amounts to an absurdity." *Vostad*, 520 N.W.2d at 275 (citing *Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990)).

## DECISION

[¶ 7] **Did the trial court err when it concluded that the forklift was a motor**

vehicle or a motorized land conveyance excluded from coverage under Insurers' policies?

■ [¶ 8] The trial court ruled the forklift was excluded from coverage under the policies issued by Insurers because it was a "motor vehicle" or "motorized land conveyance." The USF & G policy states:

Medical Payments to Others do not apply to **bodily injury** or **property damage**:

1. arising out of the:

a. ownership, maintenance, use, loading or unloading of *motor vehicles or all other motorized land conveyances*, including any trailers, owned or operated by or rented or loaned to any **insured** . . . . (Italics supplied.)

[¶ 9] The United Fire policy excludes from coverage any personal injury or property damage "arising from the ownership, maintenance, operation, use, loading or unloading of any 'motor vehicle' or watercraft." The policy defines a "motor vehicle" as "a motorized land vehicle designed for use on or off public roads."

[¶ 10] Plaintiffs contend the forklift does not qualify as a "motorized land vehicle" or a "motorized land conveyance" under the specific definitions or exclusions of either policy. They assert that the term "motorized" is ambiguous and therefore the language should be construed against Insurers to provide coverage. They also claim the forklift was never intended to be a land transport vehicle of any sort, but was instead designed only to lift and place objects at heights not easily reached by a person standing on the ground. They argue the forklift was not intended for use on or off a public road or to transport people.

[¶ 11] At the outset, we must point out that much of the case law relied on by Plaintiffs is inapposite. To support their claim that the forklift is not a motor vehicle under the United Fire policy, Plaintiffs cite decisions of other courts holding that a "motor vehicle" is a vehicle designed for lawful operation on public highways. *Jones v. Cloverdale Equipment Co.*, 165 Mich.App. 511, 419 N.W.2d 11, 12 (1987); *Jones v. Employers Insurance of Wausau*, 157 Mich.App. 345, 403 N.W.2d 130,

132 (1987); *State Auto. Mut. Ins. Co. v. Hoyle*, 106 N.C.App. 199, 415 S.E.2d 764, 766 (1992), *review denied*, 331 N.C. 557, 417 S.E.2d 803 (1992). *See also D'Angelo v. Cornell Paperboard Products Co.*, 33 Wis.2d 218, 147 N.W.2d 321, 324–25 (1967) (under the direct-action statute, a motor vehicle is a vehicle that is being operated on the highway at the time of the accident).

[¶ 12] These cases do not apply here because, as noted above, Insurers' policies give the term "motor vehicle" a broader definition. Therefore, we need not consider whether the bare term "motor vehicle" refers only to vehicles designed for use on public roads, as other courts have done, because the contracting parties have included a more expansive definition in their agreement.

■ [¶ 13] The issue is whether the forklift is a "motorized land vehicle," as stated in the United Fire exclusion, or a "motorized land conveyance," as stated in the USF & G exclusion. As a preliminary matter, we do not agree that the term "motorized" is ambiguous. Motorize is commonly understood to mean "to equip with a motor." *Fontenot v. Louisiana Farm Bureau Mut. Ins. Co.*, 535 So.2d 552, 553 (La.Ct.App.1988) (citing Webster's Ninth New Collegiate Dictionary (1984)); *Gracey v. Heritage Mut. Ins. Co.*, 518 N.W.2d 372, 374 (Iowa 1994) (holding the ordinary meaning of motorized is a machine that contains an engine); *Hoyle*, 415 S.E.2d at 764 (holding "motorized means to 'equip (vehicles, machines, etc.) with a motor or motors'") (citing Webster's New World Dictionary, Second College Edition (1970)), *review denied*, 331 N.C. 557, 417 S.E.2d 803 (1992). Consequently, a "motorized" conveyance or vehicle is reasonably understood to mean a machine that is equipped with a motor. *Fontenot*, 535 So.2d at 553.

■ [¶ 14] Furthermore, the forklift satisfies the definition of a motorized land conveyance or a motorized land vehicle. First, the forklift is motorized. It has a gasoline or diesel engine and a six-speed automatic transmission. It is equipped with four-wheel drive, outboard industrial disc brakes, and a steering wheel. A mechanical arm attached to the forklift can raise and place objects up

to thirty-five feet above the ground. Second, the forklift is designed for use on land. Indeed, it is clear from the record that this forklift is intended and designed for operation on the highway. The operations manual for the forklift states: "When in use in 'HI' range on roads or highways, ONLY use two wheel steering." The manual also advises owners to observe local traffic laws during highway use: "Before operating the [forklift] on roads or highways, check local laws on the use of lights, flags, licensing, slow moving vehicle EMBLEM (SMV), etc." Finally, the forklift is clearly a conveyance or vehicle. Conveyance denotes "a means of carrying or transporting something (as persons or passengers): VEHICLE." *Gracey*, 518 N.W.2d at 374 (citing Webster's Third New International Dictionary 499 (1993)).

[¶ 15] Contrary to Plaintiffs' claim, forklifts are designed to transport people or objects over land. A forklift is defined as a " 'self-propelled machine for hoisting *and transporting* heavy objects by means of steel fingers inserted under the load.' " *Daus v. Marble*, 270 N.J.Super. 241, 636 A.2d 1091, 1096 (App.Div.1994) (quoting Webster's New Collegiate Dictionary (1980)). The forklift in this case does lift and place objects, as Plaintiff's contend, but it need not do so from a stationary position. It is equipped to move loads from one area to another. Additionally, the forklift transports its operator as it moves. *See also Hoyle*, 415 S.E.2d at 767 (defining a "motorized land conveyance" as "anything equipped with something that produces motion which is used on land as a means of taking something or someone from one place to another"); *Thedin v. U.S. Fidelity & Guaranty Ins. Co.*, 518 N.W.2d 703, 706 (N.D.1994) (holding "the common, ordinary meaning of land motor vehicle encompasses any motor driven conveyance for transporting people or things on land").

[¶ 16] The USF & G policy contains a narrow exception to the broad exclusion for motorized land conveyances. The policy permits coverage for "a motorized land conveyance designed . . . for the maintenance of an **insured** location[.]" Plaintiffs contend the forklift involved in the accident falls within this exception, because it was being used to maintain an insured location. According to the USF & G policy, an "insured location" includes "vacant land owned by or rented to any **insured** other than farmland . . ." and "land owned by or rented to any **insured** on which a one or two-family **dwelling** is being constructed as a **residence** for any **insured**." (Emphasis in original.)

[¶ 17] Neither of these definitions applies to the property where the accident occurred. First, the property was not vacant. Pfisterer was constructing a large building on the property to store his vehicles. Testimony indicated construction was approximately 60% to 70% complete at the time of the accident. Second, a one or two-family dwelling was not being constructed on the property. There were no plans to include a residence in the warehouse at the time of the accident, nor was there any other construction involving a residence under way on the property. Although Pfisterer had a small trailer home on the property that he periodically slept in, it was not "being constructed" as a residence at the time of Plaintiffs' injuries.

[¶ 18] Affirmed.

[¶ 19] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.